UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------- x
JAMES A. HARNAGE,                 :
                                  :
          Plaintiff,              :
                                  :
v.                                :   Civil No. 3:21-cv-738 (AWT)
                                  :
C.O. ZAVAIGNE, et al.,            :
                                  :
          Defendants.             :
------------------------------- x
```

## RULING ON DEFENDANTS' MOTION TO DISMISS

The remaining defendants in this case have moved to dismiss the Complaint with prejudice on the basis that the plaintiff was aware, at the time that he filed his motion to proceed in forma pauperis, that his claim of poverty was untrue. For the reasons set forth below, the motion to dismiss is being denied.

I.   **BACKGROUND**

The pro se plaintiff, James A. Harnage, is currently confined in the custody of the Connecticut Department of Correction ("DOC") pursuant to a sentence imposed on September 24, 2010. On May 28, 2021, the plaintiff filed suit against the remaining defendants and others under 42 U.S.C. § 1983. See Compl. (ECF No. 1). That same day, he also filed a motion for leave to proceed in forma pauperis ("IFP") and submitted a Prisoner Trust Fund Account Statement to support his IFP application. See Mot. for Leave to Proceed IFP (ECF No. 2);

-1-

Prisoner Trust Fund Account Statement (ECF No. 3).

Because the court has dismissed more than three of his cases as frivolous, the plaintiff is subject to the so-called three-strikes provision at 28 U.S.C. § 1915(g), and he may not bring a civil action without prepaying the filing fee unless his complaint alleges "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). On July 28, 2021, the court denied the plaintiff's motion to proceed IFP because his allegations failed to indicate that he faced any imminent danger of serious physical injury as required to meet the exception to the three-strikes rule. See Ruling and Order (ECF No. 7). The court directed the plaintiff to pay the filing fee. See id. at 2-3. In so ruling, the court cited to the plaintiff's statement in the Complaint that "[t]he plaintiff anticipates the payment of the filing fee." Compl. at ¶ 159. The filing fee was paid on August 26, 2021.

On February 23, 2022, the defendants filed this motion to dismiss with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A) on the basis that the plaintiff was aware, at the time that he filed his motion to proceed IFP, that his claim of poverty was untrue.

## II.  LEGAL STANDARD

Where a plaintiff has moved to proceed in forma pauperis, 28 U.S.C. § 1915 provides in relevant part that "[n]otwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). "Section 1915(e)(2)(A) serves the purpose of preventing abuse of the judicial system by 'weed[ing] out the litigants who falsely understate their net worth in order to obtain in forma pauperis status when they are not entitled to that status based on their true net worth.'" Vann v. Comm'r of N.Y. City Dep't of Corr., 496 F. App'x 113, 115 (2d Cir. 2012) (citation omitted).

"[D]ismissal with prejudice in the context of section 1915 [is] an extreme sanction to be exercised only in appropriate cases," including "cases presenting a clear record of delay or willful or contumacious conduct." Camp v. Oliver, 798 F.2d 434, 438 (11th Cir. 1986). Thus, while "dismissal is mandatory in the face of untrue allegations of poverty," Oquendo v. Geren, 594 F.Supp.2d 9, 11 (D.D.C. 2009), "courts adopt a flexible approach in assessing the falsity of these allegations," Floyd v. Lee, 85 F.Supp.3d 482, 493 (D.D.C. 2015). "Although a prisoner's misrepresentation of his or her financial assets might not necessarily rise to the level of an untrue allegation of poverty

requiring dismissal in all cases, dismissal under §
1915(e)(2)(A) is certainly appropriate where a plaintiff
conceals or misrepresents his or her financial assets or history
in bad faith to obtain in forma pauperis status." Id. "Bad faith
. . . includes deliberate concealment of income in order to gain
access to a court without prepayment of filing fees." Id.
(citing Cuoco v. U.S. Bureau of Prisons, 328 F.Supp.2d 463, 467-
68 (S.D.N.Y. 2004)). In evaluating the falsity of a plaintiff's
allegation of poverty, the court considers the plaintiff's
litigation history and familiarity with IFP procedures. See id.
Dismissal without considering a lesser sanction may be
appropriate where "a litigant acted in bad faith, has
significant experience with the workings of the court, and has
an extensive history with the IFP statute." Shepherd v. Annucci,
921 F.3d 89, 98 (2d Cir. 2019).

In addition, "[a] court has the inherent power to supervise
and control its own proceedings and to sanction counsel or a
litigant for bad-faith conduct." Shepherd, 921 F.3d at 97
(quoting Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir.
1995) (internal quotation marks omitted)). Thus, district courts
have discretion to "impose sanctions against litigants who abuse
the judicial process" after notice of the sanction and an
opportunity to be heard if the litigants' conduct evinces
"extraordinary circumstances, such as demonstrated history of

frivolous and vexatious litigation." <u>Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.</u>, 506 F. App'x 65, 69 (2d Cir. 2012) (summary order) (citations omitted). Sanctions may include, among other things, prohibiting a litigant from filing pleadings, motions, or appeals. <u>Id.</u> (citation omitted). However, sanctions should not be imposed unless the litigant has had adequate notice and an opportunity to be heard. <u>Id.</u> (citing <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 334 (2d Cir. 1999)).

**III. DISCUSSION**

In response to question 7 in the IFP application, the plaintiff stated correctly that he had no money in cash or in checking or savings accounts; Cicchiello & Cicchiello's client funds account is the law firm's account, not the plaintiff's account. The plaintiff left blank the part of question 6 that asked about other sources of money the plaintiff had received within the prior twelve months. The plaintiff maintains that he mistakenly left that question unanswered when he filed the Complaint and the accompanying IFP application. The plaintiff otherwise responded accurately to question 6. Question 8 inquires about the total value of property the plaintiff owns. Because the money on deposit in Cicchiello & Cicchiello's client funds account was the plaintiff's money, that was property that he owned, though most litigants would not realize this.

The defendants maintain that the plaintiff's claim that he mistakenly filed the IFP application without responding to the question about other sources of money he had received in the preceding twelve months is not credible in light of the plaintiff's extensive experience as a litigant and the fact that the plaintiff intentionally arranged for the money at issue to be sent to his attorney's office instead of to his prisoner trust account, where it would have been used to pay filing fees he owed.

Based on the documentary evidence and the chronology of relevant events, the court concludes that the defendant did not act in bad faith by deliberately concealing or misrepresenting his financial assets in order to obtain IFP status, but rather, mistakenly filed the IFP application without providing the answer to the pertinent question.

The Prison Litigation Reform Act requires an inmate to pay the filing fee for any case in which he was granted IFP status in monthly payments of 20% of the preceding month's deposits to his prisoner trust account. See 28 U.S.C. § 1915(b)(2). In the District of Connecticut, the Department of Correction assesses the fees and remits them to the court when the entire filing fee has been collected.

In or around October 2020, the plaintiff filed a tax return
with the Internal Revenue Service so that he would receive
Economic Impact Payments, commonly referred to as stimulus
payments. Prior to filing that tax return, the plaintiff came up
with a stratagem that would enable him to use the stimulus
payments as he saw fit. The plaintiff was aware that "having the
funds deposited to [his] inmate account would cause 100% of the
monies to be captured for outstanding obligations for the Prison
Litigation Reform Act (PLRA) filing fees obligated against [his]
account (the filing fees)."  Pl.'s Decl., Pl.'s Opp., at 19 (¶
8). So the plaintiff had the checks for the stimulus payments
sent to Cicchiello & Cicchiello because he did not want the
entirety of the money used to satisfy those obligations. See Ex.
A, Defs.' Mot. (ECF No. 19-2), at 26-27 (Pl.'s Dep. at 203-04,
Harnage v. Kenny, 3:19-cv-938 (AWT) (Nov. 30, 2021)). The
plaintiff also had the checks sent to Cicchiello & Cicchiello
because he wanted to make a payment to the law firm. Attorney
Cicchiello avers that the law firm had provided services to the
plaintiff for which it had not been paid, and it has an
agreement with the plaintiff that one-third of any amounts
received for the plaintiff would go to Cicchiello & Cicchiello
as attorney's fees. In addition, the plaintiff planned to use
the stimulus payments to pay for things such as "legal books, a
subscription to the Criminal Legal News publication, etc., for

-7-

plaintiff's benefit." Pl.'s Opp. at 10.

The plaintiff was not legally required to put any money he received into his prisoner trust account so that it could be used to pay filing fees that he owed. But he was required to disclose any such funds in the IFP application.

On January 12, 2021, Cicchiello & Cicchiello deposited a check from the U.S. Treasury in the amount of $1,200 into its client funds account on behalf of the plaintiff. On January 15, 2021, Cicchiello & Cicchiello deposited a $600 check from the U.S. Treasury.

On March 26, 2021, the plaintiff wrote a letter to Cicchiello & Cicchiello inquiring about the status of the stimulus payments. This letter shows that the plaintiff was unaware that the two checks had been received and deposited by Cicchiello & Cicchiello. In fact, the letter reflects that he assumed that Cicchiello & Cicchiello had not yet received them.

On March 26, the U.S. Treasury issued a third check to the plaintiff in the amount of $1,400.00.

On March 30, 2021, Cicchiello & Cicchiello wrote a letter to the plaintiff, informing him for the first time that the checks had been received and deposited in the client funds account. At that time, the law firm did not inform the plaintiff of the amount of money that had been received. The plaintiff received this letter on April 6, 2021.

Attorney Cicchiello has submitted an affidavit in which he avers that the March 30, 2021 letter was the first time he informed the plaintiff that the checks for the stimulus payments had been received and deposited in the firm's client funds account and that he did not inform the plaintiff at that time of the amount of money that had been received. See Ex. 6, Pl.'s Opp., at 86 (¶ 12).

On April 12, 2021, the plaintiff filed a motion to reopen in Harnage v. Cook, 3:20-cv-53 (AWT). He had filed the Cook case on January 13, 2020, together with a motion to proceed in forma pauperis. On January 29, 2020, the court had denied his motion to proceed in forma pauperis and informed him that if he did not tender the filing fee within twenty days, the case would be dismissed. The plaintiff had appealed, and his appeal had been dismissed on September 22, 2020. On April 12, 2021, the plaintiff filed a Motion to Open to Pay Filing Fee on an Amended Complaint and Order the Defendant to Payout Captured Filing Fees to this Court (ECF No. 14) but did not tender the filing fee with that motion. In the motion, the plaintiff wrote: "Since that time, plaintiff has developed the means by which he can have the filing fee of $400.00, paid by someone on his behalf, within thirty (30) days of this court[']s grant of this motion to open." Pl.'s Mot. to Reopen at 1 (¶ 5), Harnage v. Cook, 3:20-cv-53 (AWT). On April 22, 2021, the court denied the motion

to reopen in the <u>Cook</u> case.

On May 6, 2021, Harnage filed a motion for reconsideration of the court's denial of his motion to reopen in the <u>Cook</u> case. In that motion, the plaintiff wrote:

> The court, in denying ECF 14, mistakenly believed that plaintiff sought to rely on the $1,410.49 as the source for the funds with which to pay the filing fee in this action. This is incorrect. Plaintiff does understand that the PLRA sub-account funds are already obligated for filing fees in other actions. The filing fee in this action[] would be paid separately by a third-party on plaintiff's behalf.

Mot. for Reconsideration (ECF No. 17) at 1, <u>Harnage v. Cook</u>, 3:20-cv-53 (AWT). The plaintiff was correct as to the court's mistaken belief as to the source of the funds to pay the filing fee.

The plaintiff explains that "[w]hen the <u>Cook</u> action's motion to open was denied, Harnage used the body of the <u>Cook</u> action's complaint, after amending a few pages, as the complaint in this action, to avoid re-writing the entire document." Pl.'s Opp. at 6. <u>Compare</u> Compl. (ECF No. 1) <u>with</u> Am. Compl. (ECF No. 13), <u>Harnage v. Cook</u>, 3:20-cv-53 (AWT). He states that he "prepared the complaint and IFP application, in this action, in advance" and that he "fully intended to fill in paragraph 6(e) of the IFP, prior to filing, once he received a total of the stimulus payments" from Cicchiello & Cicchiello. Pl.'s Opp. at

6.

On or about May 25, 2021, the plaintiff learned that he was scheduled to undergo dental surgery on May 27, 2021. The plan was that six teeth would be extracted during that surgery, and the plaintiff's medical records reflect that six teeth were in fact extracted on May 27, 2021.

The plaintiff is an extraordinarily active litigant, and he contends that on May 25, 2021 he decided to "quickly attempt to clean[ ]up the backlog of his workload, including the filing of this action, to allow himself time for recovery from the extractions without getting further behind." Pl.'s Opp. at 7. He asserts that "[i]n [his] haste to clean[ ]up his work file backlog, plaintiff mistakenly forgot that he was also awaiting the total of the stimulus payments received by the law[ ]firm to complete the IFP application, § 6(e)." Id.

The Complaint and the IFP application were filed on May 28, 2021. At that time, the plaintiff had not yet received the information from the law firm with respect to the amounts of the stimulus payments. Attorney Cicchiello has submitted an affidavit averring that he did not inform the plaintiff of the amounts of the stimulus payments until August 24, 2021. See Ex. 6, Pl.'s Opp., at 86 (¶ 15).

-11-

Based on the foregoing, the court concludes that it is more likely that the plaintiff forgot that he was waiting for information about the total amount of the stimulus payments being held by the law firm to complete the IFP application than that he filed the application with the question about other sources of money left blank in an effort to mislead the court. The Cook case is the predecessor to the instant action. In that case, the plaintiff twice highlighted the fact that he had the means to pay the filing fee. The plaintiff adopted the amended complaint in Cook as the basis for the complaint in this case. See Compl. at ¶ 160. Also, it is undisputed that the plaintiff is a very experienced litigant, and such a litigant would know that as soon as the filing fee in any of his cases was paid with a check from Cicchiello & Cicchiello, there would be questions about the source of the money used to pay that filing fee. Under these circumstances, an effort by the plaintiff to mislead the court about whether he had the means to pay the filing fee in this case would have been inept, and this is totally at odds with the careful thought that went into developing the stratagem that enabled the plaintiff to use the stimulus payments in the way he wished to. Thus, the evidence shows that, in his haste to get a lot of legal work done before his dental surgery, the plaintiff mistakenly submitted the IFP application with the question at issue unanswered.

Because the plaintiff mistakenly submitted his IFP application without reflecting the fact that he had received stimulus payments, he did not act in bad faith to willfully or deliberately conceal or misrepresent his financial assets in order to obtain IFP status.

**IV.   CONCLUSION**

Accordingly, the Defendants' Motion to Dismiss Pursuant to 28 U.S.C. § 1915(e)(2)(A) (ECF No. 19) is hereby DENIED.

It is so ordered.

Dated this 13th day of September 2022, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
